UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

JENNIFFER THOMPSON,                                                                    Plaintiff,

v.                                                              Civil Action No. 3:20-cv-16-DJH-RSE

SEAGLE PIZZA, INC. et al.,                                                           Defendants.

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jenniffer Thompson, "individually and on behalf of similarly situated persons," has filed an unopposed motion for final approval of her hybrid class-action and Fair Labor Standards Act (FLSA) collective-action settlement with Defendants Seagle Pizza, Inc.; Joseph M. Seagle; Bullion Pizza, Inc.; Allgood Pizza, Inc.; Madisonville Pizza, Inc.; J&D Pizza, Inc; E-Ville Pizza, Inc.; and J&C Pizza, Inc.[1]  (Docket No. 42, PageID # 311; *see* D.N. 38)  She seeks class- and collective-action certification for purposes of the settlement; final approval of the parties' "Settlement and Release Agreement" and "Supplemental Settlement Agreement and Release" (D.N. 25; D.N. 25-1; D.N. 33-3; D.N. 33-4); approval of the attorney fees, costs, and expenses requested by class counsel; and approval of payments to the class representative and the third-party settlement administrator.  (D.N. 42, PageID # 312)  A final fairness hearing was held on February 18, 2022, and no class members have objected to the parties' settlement.  (D.N. 43, PageID # 343; *see* D.N. 47)  For the reasons explained below, the Court will grant Thompson's motion.

---

[1] Thompson previously filed an unopposed motion for final approval of the parties' settlement agreement under seal.  (D.N. 38)  That motion, however, is materially identical to the present motion (D.N. 42), which Thompson filed on the public docket in response to the Court's September 8, 2021 Order.  (*See* D.N. 39; D.N. 41)  Accordingly, the sealed version of Thompson's motion will be denied as moot.

**I.**

**A.    Background**

This case involves the alleged under-reimbursement of Domino's Pizza delivery drivers

for the use of their personal vehicles for business purposes.  According to Thompson's complaint,

the defendants "operate numerous Domino's Pizza franchise stores in Kentucky and Indiana."

(D.N. 23, PageID # 64)  Thompson, who worked as a delivery driver for the defendants for four

months in 2019, claims that the latter required delivery drivers to "use their own automobiles to

deliver pizza and other food items to their customers."  (*Id.*, PageID # 64, 67)  But rather than

reimbursing those drivers "for the reasonably approximate costs of the business use of their

vehicles," the defendants allegedly used a "flawed" reimbursement method for such vehicle

expenses, causing the drivers' wages "to fall below the minimum wage during some or all

workweeks."[2]  (*Id.*, PageID # 64–65)

Thompson brought this action "individually and on behalf of all other similarly situated

delivery drivers" in January 2020, alleging violations of the FLSA and Kentucky and Indiana

minimum-wage laws.[3]  (D.N. 1, PageID # 1; *see* D.N. 23, PageID # 64, 75–80)  Following limited

---

[2] More specifically, Thompson alleges that the defendants "reimbursed" her and other pizza-delivery drivers "for mileage at a rate of $[0].32 per mile."  (D.N. 23, PageID # 70)  This mileage rate was inadequate, according to Thompson, because "[d]uring the relevant time period, the IRS business mileage reimbursement rate ranged between $[0].545 and $[0].535 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas."  (*Id.*)  Thus, "[u]sing the lowest IRS rate" ($0.535) and the "highest [reimbursement] rate per mile" that Thompson received while working for the defendants ($0.32), Thompson claims that "every mile" she drove as a pizza-delivery driver "decreased her net wages by at least" $0.215 per mile (i.e., $0.535–$0.32).  (*Id.*)

[3] Kentucky's minimum wage is the same as the federal minimum wage of $7.25 per hour.  Ky. Rev. Stat. § 337.275(1); *see* 29 U.S.C. § 206(a).  The same is true for Indiana's minimum wage. Ind. Code § 22-2-2-4(c).  Moreover, the parties have not suggested that Kentucky or Indiana law requires reimbursing employees for vehicle expenses in excess of what is required by federal law, nor has the Court identified any such differences.  The potential merits of Thompson's FLSA

2

discovery and mediation with an "experienced wage and hour class and collective action mediator," the parties reached a settlement in September 2020. (D.N. 26, PageID # 138; *see id.*, PageID # 136) They then jointly moved for preliminary approval of their class- and collective-action settlement agreement, which was filed under seal. (*Id.*, PageID # 136; *see* D.N. 24; D.N. 25; D.N. 27) The Court held a preliminary fairness hearing in May 2021 (*see* D.N. 31) and preliminarily approved the parties' settlement agreement in a June 1, 2021 Order. (D.N. 34, PageID # 213) The Court also conditionally certified a settlement class; approved and directed the distribution of the parties' "Notice of Class and Collective Action Settlement and Final Fairness Hearing" and "Settlement Claim Form" to class members; appointed class counsel; confirmed a third-party settlement administrator; and set an implementation schedule for the claims process and final approval of the settlement. (*Id.*, PageID # 213–16)

The Court-approved notice of the parties' settlement was sent to 2,244 potential class members. (D.N. 43, PageID # 341–42) Two recipients excluded themselves from the settlement class, and no class members objected to the parties' settlement agreement.[4] (*Id.*, PageID # 343) The settlement administrator also mailed notices to "the appropriate federal and state government officials" as required by the Class Action Fairness Act, none of whom objected to the parties' settlement. (*Id.*, PageID # 341) A final fairness hearing was held on February 18, 2022, which no class members attended. (*See* D.N. 47) Thompson now seeks final approval of the parties' class- and collective-action settlement agreement. (D.N. 42)

---

claims therefore do not appear to materially differ from her state minimum-wage claims. (*See* D.N. 23, PageID # 75–80)

[4] According to the settlement administrator, 192 of the notice packets sent to class members "remain classified as undeliverable." (D.N. 43, PageID # 343)

**B.      The Parties' Settlement Agreement**

Under the parties' Settlement and Release Agreement (D.N. 25; D.N. 33-3), "Participating

Class Members" will "release and forever discharge" the defendants from all claims that arose

under any federal, state, or local wage and hour laws during the "Release Period."[5]  (D.N. 33-3,

PageID # 197–98)  The total "Maximum Settlement Amount"—that is, the "maximum amount

[the defendants] will pay under" the parties' agreement—is $383,900.  (D.N. 25, PageID # 92)

This amount is inclusive of (1) $208,333.33 in attorney fees, costs, and expenses; (2) a $5,000

service payment to Thompson, the class representative; (3) $20,000 in potential settlement

administration costs to be paid to the settlement administrator; and (4) $150,566.67 in total

settlement funds that will be distributed to the participating class members.  (*Id.*, PageID # 92, 94–

96)

Class members who opted in to the FLSA portion of the settlement by submitting a "valid

and timely Claim Form" will receive a "Potential Settlement Payment" that is based on the number

of miles each claimant drove while making pizza deliveries for the defendants during the Release

Period.  (*Id.*, PageID # 90, 97)  All other participating class members—that is, those "who d[id]

not timely submit a valid Claim Form" and did not request to be excluded from the settlement

class—will receive a "minimum payment" of $25.  (*Id.*, PageID # 97)  These minimum payments

will be paid out of a "Rule 23 Fund" consisting of $40,200; the larger "Potential Settlement

Payment[s]" will be paid out of a "FLSA Claim Fund" consisting of $80,366.67; and a "Reserve

---

[5] "Participating Class Members" are those who did not timely exclude themselves from the "Settlement Class," which is defined in turn as "all delivery drivers who worked for [the defendants] during the Release Period." (D.N. 25, PageID # 92–93)  The "Release Period" is the period of time from May 29, 2015, to June 1, 2021, for those "Participating Class Members who worked for [the defendants] in Kentucky" and the period of time from May 29, 2017, to June 1, 2021, for those "Participating Class Members who worked for [the defendants] in Indiana." (*Id.*)

4

Fund" of $30,000 will cover late opt-in claims and other "contingencies."[6]  (*Id.*, PageID # 95–96)

Of the 2,242 participating class members, 386, or 17.2 percent of the settlement class, submitted a

Settlement Claim Form and thus opted to receive their individualized "Potential Settlement

Payments" from the FLSA Claim Fund.[7]  (*See* D.N. 43, PageID # 382)

The defendants and Thompson also entered into a Supplemental Settlement Agreement and

Release, which is meant to "fully and conclusively resolve and settle all matters and claims

Thompson could assert against [the defendants] . . . including, but not limited to, any claims for

relief that were made or could have been made by Thompson in the [present] matter."  (D.N. 33-

4, PageID # 199)  The supplemental agreement further provides that Thompson will not "seek re-

employment with or by [the defendants]"; that she will not say "anything derogatory or disparaging

about [the defendants]" to any "person or entity"; and that she "agrees and understands" that the

agreement is "strictly confidential."  (D.N. 25-1, PageID # 119–20)

## II.

The Court will first address Thompson's request for final certification of the settlement

class pursuant to Federal Rule of Civil Procedure 23 and § 216(b) of the FLSA.  (*See* D.N. 42,

PageID # 312)  The settlement class here consists of "[a]ll Kentucky-based delivery drivers

employed by [the defendants] from May 29, 2015 to June 1, 2021" and "[a]ll Indiana-based

delivery drivers employed by [the defendants] from May 29, 2017 to June 1, 2021."  (D.N. 42-2,

---

[6] Participating class members can still opt to receive their "Potential Settlement Payment (reduced proportionally by the remaining time on the Late Opt-In's FLSA statute of limitations) less the minimum payment previously received" until the end of the "Reserve Fund Period."  (D.N. 25, PageID # 96)  The "Reserve Fund Period" will run "through the expiration of the three-year statute of limitations under the [FLSA], which will be three years following Preliminary Approval."  (*Id.*, PageID # 93)  That end date here is June 1, 2024.  (*See* D.N. 34)

[7] These "Potential Settlement Payments" range from $25—the minimum amount that all settlement-class members are entitled to receive under the parties' settlement (*see* D.N. 25, PageID # 97)—to $2,157.35.  (*See* D.N. 50-4)

PageID # 394; *see* D.N. 25, PageID # 93)  As explained below, the Court will certify the settlement class under both Rule 23 and the FLSA.

**A.      Rule 23 Certification**

Federal Rule of Civil Procedure 23(e) provides that the claims of "a class proposed to be certified for purposes of settlement" can be settled "only with [a] court's approval."  Fed. R. Civ. P. 23(e).  Such a settlement class must in turn satisfy the requirements for maintaining a class action prescribed by Rules 23(a) and (b).  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620–22 (1997); *see also Elliott v. LVNV Funding, LLC*, No. 3:16-cv-675, 2019 WL 4007219, at *3 (W.D. Ky. Aug. 23, 2019) (observing that "[t]he Rule 23 prerequisites are not relaxed in the settlement context").

The Court discussed Rule 23(a)'s numerosity, commonality, typicality, and adequacy-of-representation requirements at length in its June 1, 2021 Order and concluded that the proposed settlement class here easily satisfied all four, *see* Fed. R. Civ. P. 23(a)(1)–(4).  (D.N. 34, PageID # 209–11)   The Court also concluded that the settlement class satisfied Rule 23(b)(3)'s predominance and superiority requirements, *see* Fed. R. Civ. P. 23(b)(3).  (D.N. 34, PageID # 211).  As the Court is unaware of any change in circumstances relating to these requirements, further analysis regarding class certification is unnecessary here.  The settlement class in this matter can thus "be certified for purposes of settlement."  Fed. R. Civ. P. 23(e); *see Davis v. Omnicare, Inc.*, No. 5:18-cv-142, 2021 WL 4188053, at *4 (E.D. Ky. Sept. 14, 2021) (incorporating "the reasoning articulated in the [court's] preliminary certification Order" and "again find[ing]" at the final-certification stage "that the proposed Class me[t] the requirements of" Rules 23(a) and (b)(3)).

**B.      FLSA Certification**

Section 216(b) of the FLSA "allows similarly situated employees to recover compensation from their employer in 'opt-in' class action litigation." *White v. Baptist Memorial Health Care Corp.*, 699 F.3d 869, 877 (6th Cir. 2012).  In the FLSA collective-action context, "the term 'certify' is used when the court has determined that opt-in plaintiffs are similarly situated." *O'Bryant v. ABC Phones of N.C., Inc.*, No. 2:19-cv-2378, 2020 WL 4493157, at *5 (W.D. Tenn. Aug. 4, 2020). Plaintiffs can satisfy this "similarly situated" requirement "by showing they 'suffer[ed] from a single FLSA-violating policy, and when proof of that policy . . . proves a violation to all plaintiffs.'" *Jesiek v. Fire Pros, Inc.*, 275 F.R.D. 242, 246 (W.D. Mich. 2011) (quoting *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 585 (6th Cir. 2009)); *see Pierce v. Wyndham Vacation Resorts, Inc.*, 922 F.3d 741, 745 (6th Cir. 2019) ("The heart of the matter is whether the plaintiffs should be permitted to bring their claims of liability and damages as a group based on representative, rather than personal, evidence.").

"District courts determine whether plaintiffs are similarly situated" via "a two-step process." *White*, 699 F.3d at 877.  The Court completed the first step of that process in this case when it conditionally certified a settlement class of pizza-delivery drivers in its June 1, 2021 Order (D.N. 34, PageID # 212–13).  *See O'Bryant*, 2020 WL 4493157, at *6 ("At the first stage, pre-discovery, the court may grant conditional certification of the collective action . . . .).  The question now is "whether final certification" of that same class "is merited under step two." *Davis*, 2021 WL 4188053, at *2.

Although the Court must apply a stricter standard when deciding at the second step whether collective-action plaintiffs are "similarly situated," *see White*, 699 F.3d at 877, it nonetheless concludes that certification of the collective-action class in this matter is warranted.   First,

Thompson claims that she and the other pizza-delivery drivers comprising the settlement class were all "subjected to the same inadequate reimbursement policy" by the defendants "regardless of the precise Domino's location" where each delivery driver worked (D.N. 33-2, PageID # 196), meaning that these class members "suffer[ed] from a single, [alleged] FLSA-violating policy." *Jesiek*, 275 F.R.D. at 246; *see Davis*, 2021 WL 4188053, at *2 (granting final certification to a collective-action class because the opt-in plaintiffs in that case "suffered from the same alleged FLSA-violating policies and [we]re therefore similarly situated"). And second, because the Court concluded above that the settlement class here has satisfied Rule 23's class-certification requirements, it can easily conclude that the settlement class has likewise met the FLSA's "less demanding" "similarly situated" standard. *Monroe v. FTS USA, LLC*, 860 F.3d 389, 397 (6th Cir. 2017); *see Ware v. CKF Enters., Inc.*, No. 5:19-cv-183, 2020 WL 5087766, at *4 (granting final certification in part because "Rule 23(b)'s stringent criteria for certification ha[d] been satisfied" by the proposed class at issue, meaning "the FLSA's less stringent standard ha[d] also been met.").

## III.

Having certified the settlement class, the Court will next decide whether to approve the parties' settlement agreement. (*See* D.N. 42, PageID # 311) Class-action settlements and agreements settling FLSA claims both require court approval. *See* Fed. R. Civ. P. 23(e); *Steele v. Staffmark Invs., LLC*, 172 F. Supp. 3d 1024, 1026 (W.D. Tenn. 2016); *see also Burnham v. Papa John's Paducah, LLC*, No 5:18-cv-112, 2020 WL 2065793, at *1 (W.D. Ky. Apr. 29, 2020) ("Like class action suits brought pursuant to [Rule 23], [FLSA] action[s] cannot be settled without court approval."). In the class-action context, "the court may approve" a settlement agreement "only after a hearing and only on finding that [the agreement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Similarly, a court reviewing a proposed settlement of FLSA claims "must

8

determine whether the settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" *Burnham*, 2020 WL 2065793, at *1 (quoting *Crawford v. Lexington-Fayette Urban Cty. Gov't*, No. 06-cv-299, 2008 WL 4724499, at *2 (E.D. Ky. Oct. 23, 2008)); *see Love v. Gannett Co.*, No. 3:19-cv-296, 2021 WL 4352800, at *1 (W.D. Ky. Sept. 24, 2021) ("Courts in this circuit apply the same analysis to settlement agreements in the FLSA context that they do in the Rule 23 context.").

The Sixth Circuit has "established a seven-factor test to assess whether or not a class action settlement is 'fair, reasonable, and adequate' under [Rule] 23(e)." *Does 1–2 v. Déjà Vu Servs., Inc.*, 925 F.3d 886, 894 (6th Cir. 2019). Those factors are (1) the "risk of fraud or collusion"; (2) the "complexity, expense and likely duration of the litigation"; (3) the "amount of discovery engaged in by the parties"; (4) the "likelihood of success on the merits"; (5) the "opinions of class counsel and class representatives"; (6) the "reaction of absent class members"; and (7) the "public interest." *Id.* at 894–95 (quoting *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)). Because FLSA settlements must likewise be "fair and reasonable," courts in the Sixth Circuit apply this seven-factor test when reviewing such settlements as well. *Burnham*, 2020 WL 2065793, at *2; *see Déjà Vu Servs.*, 925 F.3d at 894–99 (applying the seven-factor test to a class-action settlement resolving FLSA claims); *Love*, 2021 WL 4352800, at *2 ("But courts in this district nevertheless generally apply a seven-factor test (originating in the Rule 23 context) for confirming that a [FLSA] settlement agreement is a fair, reasonable, and adequate resolution . . . . ).

Rule 23(e) also lists several factors a court must weigh when reviewing a class-action settlement. Specifically, a court must consider whether

    (A)    the class representatives and class counsel have adequately represented the class;
    (B)    the proposal was negotiated at arm's length;
    (C)    the relief provided for the class is adequate, taking into account:

      (i)      the costs, risks, and delay of trial and appeal;

      (ii)     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

      (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

      (iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)     the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Given the substantial overlap between this Rule and the Sixth Circuit's seven-factor test, however, courts apply either or both sets of factors when reviewing hybrid class-action and FLSA collective-action settlements. *See Davis*, 2021 WL 4188053, at *5–6 (applying both sets of factors); *Ditsworth v. P & Z Carolina Pizza*, No. 1:20-cv-84, 2021 WL 2941985, at *2–4 (W.D. Ky. July 13, 2021) (applying only the Sixth Circuit's seven-factor test); *Ware*, 2020 WL 5087766, at *5–7 (applying both sets of factors); *see also* Fed. R. Civ. P. 23(e)(2), advisory committee's note to 2018 amendment (noting that "the goal" of Rule 23(e)(2)'s list of factors "is not to displace any factor[s]" already considered by circuit courts when reviewing class-action settlements).

The Court determined in its June 1, 2021 Order that the parties' settlement agreement here satisfies nearly all of the factors listed in Rule 23(e)(2) and the Sixth Circuit's seven-factor test (*see* D.N. 34, PageID # 203–09), and it need not revisit most of those prior determinations here. *See Davis*, 2021 WL 4188053, at *5 ("The Court again incorporates its prior reasoning [from the preliminary-certification stage] in finding that the proposed [class-action and collective-action] settlement agreement is fair, adequate, and reasonable."). Accordingly, the Court will analyze for purposes of the present motion only those factors that have yet to be addressed or that require additional discussion. *See Vassalle v. Midland Funding LLC*, 708 F.3d 747, 754 (6th Cir. 2013) (asserting that district courts have "'wide discretion in assessing the weight and applicability' of

the relevant factors"). And as explained below, the Court concludes that the parties' Settlement and Release Agreement and Supplemental Settlement Agreement and Release are fair, reasonable, and adequate under both Rule 23(e)(2) and the FLSA.[8]

**A.    Bona Fide FLSA Dispute**

Because the parties' settlement agreement concerns FLSA claims, the Court must first determine whether the agreement will resolve a "bona fide dispute over FLSA provisions." *Burnham*, 2020 WL 2065793, at *1 (quoting *Crawford*, 2008 WL 4724499, at *2)). Before approving a FLSA settlement, a court must "ensure that there is a bona fide dispute . . . as to [an] employer's liability under the FLSA, lest" the settling parties "be allowed to negotiate around" the statute's wage and overtime requirements. *Kritzer v. Safelite Sols., LLC*, No. 2:10-cv-729, 2012 WL 1945144, at *5 (S.D. Ohio May 30, 2012). A bona fide dispute exists "when there are legitimate questions about 'the existence and extent of'" an employer's FLSA liability. *Jones v. H&J Restaurants, LLC*, No. 5:19-cv-105, 2020 WL 6877577, at *3 (W.D. Ky. Nov. 23, 2020) (quoting *O'Bryant*, 2020 WL 4493157, at *7). Put another way, there must be some doubt as to whether the plaintiffs would succeed on the merits of their FLSA claims. *Burnham*, 2020 WL 2065793, at *1.

Here, Thompson alleges in her complaint that the defendants' "failure to adequately reimburse" their pizza-delivery drivers for "automobile expenses" caused "systematic violations" of the FLSA's minimum-wage requirements. (D.N. 23, PageID # 69–70; *see id.*, PageID # 72)

---

[8] The Settlement and Release Agreement (D.N. 25; D.N. 33-3) must be approved by the Court because it "w[ill] bind class members," Fed. R. Civ. P. 23(e)(2), and because it resolves FLSA claims, *see Steele*, 172 F. Supp. 3d at 1026. The Supplemental Settlement Agreement and Release only binds Thompson, but it still must receive the Court's approval because it settles her FLSA claims against the defendants. *See id.*; *see also Camp v. Marquee Constr., Inc.*, No. 2:18-cv-831, 2020 WL 59517, at *1 (S.D. Ohio Jan. 6, 2020) ("FLSA cases require court approval, even where only one litigant's rights are implicated.").

The defendants, however, have contended throughout the settlement-approval process that they "properly reimbursed the Delivery Drivers' automobile expenses and complied at all times with the FLSA and applicable state wage and hours laws."  (D.N. 42, PageID # 319; *see* D.N. 26, PageID # 143)  And in the parties' settlement agreement, the defendants "deny any wrongdoing or legal liability arising out of any of the facts or conduct alleged in [this case]."  (D.N. 25, PageID # 110; *see* D.N. 25-1, PageID # 117)

The FLSA provides as a general matter that "[e]very employer shall pay to each of his employees" the federal minimum hourly wage for all non-overtime hours worked during a given workweek.  29 U.S.C. § 206(a).  Department of Labor regulations mandate in turn that employees must receive this minimum hourly wage "finally and unconditionally or 'free and clear,'" and the FLSA's minimum-wage requirements are not met "where the employee 'kicks-back' directly or indirectly to the employer . . . the whole or part of the wage delivered to the employee."  29 C.F.R. § 531.35.  "In the pizza delivery context, the cost associated with delivering food for an employer is a 'kickback' to the employer that must be fully reimbursed, lest a minimum wage violation be triggered."  *Hatmaker v. PJ Ohio, LLC*, No. 3:17-cv-146, 2019 WL 5725043, at *2 (S.D. Ohio Nov. 5, 2019).  But courts in this circuit have disagreed about how employers can reimburse delivery drivers for such vehicle expenses in order to avoid FLSA violations.  *Compare id.* at *7 (concluding that the proper reimbursement rate for pizza-delivery drivers is either the driver's actual expenses or the IRS's standard mileage reimbursement rate), *with Bradford v. Team Pizza, Inc.*, No. 1:20-cv-60, 2021 WL 2142531, at *11 (S.D. Ohio May 26, 2021) (concluding instead that employers "may 'reasonably approximate' . . . vehicle-related expenses" and are "not limited to using the actual or IRS rate").

In light of these conflicting decisions, it is unclear as a legal matter what vehicle-expense reimbursement policies are adequate under the FLSA. *See* 29 C.F.R. § 531.35. And deciding here whether the defendants' particular reimbursement policy comports with that indeterminate legal standard would be a fact-intensive inquiry that would require construing and applying a complex scheme of regulations. *See, e.g.*, *Hatmaker*, 2019 WL 5725043, at *2–7 (analyzing in detail several federal minimum-wage regulations and Department of Labor guidelines interpreting those regulations). Consequently, because there are "legitimate questions" about whether the defendants violated the FLSA's minimum-wage requirements, the Court concludes that the parties' settlement agreement will resolve a bona fide dispute. *Jones*, 2020 WL 6877577, at *3 (quoting *O'Bryant*, 2020 WL 4493157, at *7).

**B.    The Sixth Circuit's Seven-Factor Test**

The parties' settlement agreement is "fair, reasonable, and adequate" under the seven-factor test that courts in the Sixth Circuit apply to both class-action and FLSA collective-action settlements. *See Déjà Vu Servs.*, 925 F.3d at 894–95; *Ditsworth*, 2021 WL 2941985, at *2–4 (applying the seven-factor test to a hybrid class- and collective-action settlement). The Court preliminarily approved the parties' agreement under the seven-factor test in its June 1, 2021 Order (D.N. 34, PageID # 205–09), and it can conclude without further discussion here that five of the factors clearly weigh in favor of final approval as well. The "risk" that the parties' settlement is the product of "fraud or collusion"; the "amount of discovery engaged in by the parties"; and the "opinions of class counsel and class representatives" regarding the settlement agreement, *see Déjà Vu Servs.*, 925 F.3d at 894 (quoting *UAW*, 497 F.3d at 631), have not materially changed since the preliminary-approval stage. This litigation has not become less complex or less expensive in that time. *See id.* (noting that courts should consider the "complexity, expense and likely duration of

the litigation").  Nor has the strong public interest in settling complex litigation and class-actions waned.  *See id.* at 899.  The Court therefore need only address the settlement-class members' "likelihood of success on the merits" and the "reaction of absent class members."  *Id.* at 894–95.

### 1.    Likelihood of success on the merits

The "most important of the factors to be considered in reviewing a [class-action] settlement is the probability of success on the merits."  *Id.* at 895 (quoting *Poplar Creek Dev. Co. v. Chesapeake Appalachia, LLC*, 636 F.3d 235, 245 (6th Cir. 2011)).  When addressing this factor, "courts are required to closely analyze whether the claims that the unnamed class members are giving up are worth the benefits they may receive" as part of a proposed settlement.  *Id.*; *see UAW*, 497 F.3d at 631 ("[W]e cannot 'judge the fairness of a proposed compromise' without 'weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement.'").  "The lower the likelihood of success on the merits, the more desirable a favorable settlement appears."  *Kritzer*, 2012 WL 1945144, at *6.

Here, it is far from certain whether the settlement-class members would prevail on the minimum-wage claims that they will otherwise relinquish under the parties' settlement agreement. (*See* D.N. 33-3, PageID # 197–98)  As explained above, whether the defendants' reimbursement rate for vehicle expenses actually violated the FLSA is an open and complicated question. Thompson alleges that the defendants' vehicle-expense reimbursement rate is "flawed" principally because that rate is less than the IRS's standard mileage reimbursement rate.  (D.N. 23, PageID # 64, 70)  Yet in an August 31, 2020 Opinion Letter, the Department of Labor's Wage and Hour Division concluded that the "plain language" of relevant federal minimum-wage regulations "allows employers to reasonably approximate an employee's" vehicle expenses "through methods other than the IRS business standard mileage rate."   U.S. Dep't of Labor, Wage & Hour Div.,

Opinion Letter (Aug. 31, 2021); *see id.* (noting that "[n]either the FLSA nor [other] regulations limit[] . . . the methods [an employer] may use to determine whether a reimbursement reasonably approximates" the "actual business expenses incurred by employees"); *see also Bradford*, 2021 WL 2142531, at *4, *11 (concluding that a "reasonable approximation" standard applies to the reimbursement of a pizza-delivery driver's vehicle expenses and collecting other district court cases reaching that same conclusion). Accordingly, it is very possible that Thompson's FLSA claims against the defendants would fail as a matter of law, meaning in turn that she and other settlement-class members bringing identical claims would likely "recover nothing." *Ross v. Jack Rabbit Servs., LLC*, No. 3:14-cv-44, 2016 WL 7320890, at *4 (W.D. Ky. Dec. 15, 2016) (suggesting that this possibility weighs in favor of approving a FLSA settlement agreement under the likelihood-of-success-on-the-merits factor).

Thompson also acknowledges in her present motion that "[e]ven aside from the risks associated with determining [the defendants'] liability, significant risks exist as to the amount of possible damages" that she and other class members could recover. (D.N. 42, PageID # 320) They would not be entitled to liquidated damages, for instance, if the defendants were able to show that any FLSA violations were made in good faith (*id.*). *See* 29 U.S.C. § 260. Furthermore, given the defendants' argument that "many" of the class members' claims "would be subject to arbitration" (D.N. 42, PageID # 320), those members would likely face an "uphill battle . . . in attempting to litigate their claims" in federal court. *Déjà Vu Servs.*, 925 F.3d at 897; *see id.* at 896–97 (explaining that the Supreme Court and Sixth Circuit have recently held that individual arbitration clauses in employment contracts generally must be enforced). Consequently, when weighed against the substantial risk of proceeding to trial, "the tradeoff embodied in" the parties' settlement agreement here is "fair to unnamed members of the [settlement] class." *Shane Grp., Inc. v. Blue*

*Cross Blue Shield of Mich.*, 825 F.3d 299, 309 (6th Cir. 2016).  Rather than facing the prospect of costly litigation and no recovery, the class members in this case will instead "obtain the immediate and certain benefit of a cash settlement."  *New Eng. Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 631 (W.D. Ky. 2006).

The Court acknowledges that the settlement payments class members will receive under the parties' settlement agreement will be substantially less than the amount of money that those members were allegedly under-reimbursed by the defendants.  Thompson claims, for example, that the settlement-class members were under-reimbursed by at least $0.215 for every mile they drove while delivering pizzas (D.N. 23, PageID # 70), while under the parties' settlement agreement, class members will be paid the equivalent of less than two cents per mile driven (*see* D.N. 50-4).[9]  But again, it is unclear whether Thompson and the settlement-class members would prevail on their minimum-wage claims at all, let alone recover damages tied to the favorable IRS reimbursement rate that Thompson invokes in her complaint.  Moreover, the value of the parties' settlement is derived in part from the fact that it mitigates this "very uncertainty of outcome" and avoids "wasteful and expensive litigation."  *Déjà Vu Servs.*, 925 F.3d at 895 (quoting *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)).  The absence of any objections to the parties' agreement (D.N. 43, PageID # 343) further suggests that the "class members recognize the settlement's . . . benefit."  *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 WL 6310376, at *6 (S.D. Ohio Nov. 25, 2019).

---

[9] To clarify, a class member's settlement payment will be based on the "total number of his/her recorded miles making deliveries for [the defendants]" only if that member opted in to the FLSA portion of the settlement by submitting a Settlement Claim Form.  (D.N. 25, PageID # 97; *see* D.N. 33-1, PageID # 193–94)  Settlement-class members who did not submit a Settlement Claim Form will instead receive a "minimum payment" of $25, regardless of the total miles they drove while working for the defendants.  (D.N. 25, PageID # 97)

In sum, "the tangible benefits afforded to" Thompson and the settlement-class members by the parties' settlement agreement here "outweigh the value of the volatile claims that [they will] release[]." *Déjà Vu Servs.*, 925 F.3d at 897.  The likelihood-of-success-on-the-merits factor thus weighs in favor of finding the agreement fair, reasonable, and adequate.  *Id.* at 894, 897.

### 2.  Reaction of absent class members

The Court did not consider the "reaction of absent class members" at the preliminary-approval stage, *id.* at 895, because the absent class members in this case had yet to be notified of the parties' proposed settlement.  (*See* D.N. 34, PageID # 212)  Those members have since received notice of the material terms of the parties' settlement agreement, and none submitted objections.  (*See* D.N. 33-1; D.N. 43, PageID # 341–43)  Accordingly, "the fact that not one class member objected to" the agreement "weighs heavily in favor of final approval."  *Ditsworth*, 2021 WL 2941985, at *4.

### C.  Rule 23(e)(2) Factors

The parties' settlement agreement is also "fair, reasonable, and adequate" under the multi-factor standard prescribed by Rule 23(e)(2).  Fed. R. Civ. P. 23(e)(2).  The Court considered the Rule 23(e)(2) factors at the preliminary-approval stage (*see* D.N. 34, PageID # 204–09), and two of those factors unmistakably weigh in favor of final approval as well.  The representation provided by class counsel and the class representative in this case has not become observably less adequate since the Court's preliminary-approval order.  *See* Fed. R. Civ. P. 23(e)(2)(A).  And the Court's earlier conclusion that the parties' settlement agreement "was negotiated at arm's length," Fed. R. Civ. P. 23(e)(2)(B), remains unchanged.  (*See* D.N. 34, PageID # 205–06)  The Court will therefore consider here the adequacy of "the relief provided for the class" by the parties' settlement

agreement and whether that agreement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(C)–(D).

### 1.    Adequacy of the relief provided to the class

The Court has little difficulty concluding that the relief provided to the settlement-class members under the parties' settlement agreement is adequate.  *See* Fed. R. Civ. P. 23(e)(2)(C).  As a general matter, the Court already concluded above that the agreement was fair and reasonable after weighing the "likely range of possible classwide recoveries" against the "likelihood of success in obtaining such results."  Fed. R. Civ. P. 23(e)(2), advisory committee's note to 2018 amendment (indicating that this balancing "can provide a benchmark" for measuring the comparative adequacy of a "settlement figure").

Rule 23(e)(2)(C) also instructs courts to consider four sub-factors when assessing the adequacy of a class-action settlement, all of which weigh in favor of final approval here.  The substantial "costs, risks, and delay of trial" in this matter are well known to Thompson and the defendants (*see* D.N. 42, PageID # 319) and support finding their settlement agreement fair and reasonable.  Fed. R. Civ. P. 23(e)(2)(C)(i).  The "proposed method of distributing relief to the class" is effective, Fed. R. Civ. P. 23(e)(2)(C)(ii), as the settlement administrator will mail a check directly to each participating class member shortly after the settlement agreement is approved (*see* D.N. 25, PageID # 103).  *See Fitzgerald v. P.L. Mktg., Inc.*, No. 2:17-cv-2251, 2020 WL 3621250, at *9 (W.D. Tenn. July 2, 2020) (concluding that a similarly "simple and direct" distribution method was effective under Rule 23(e)(2)(C)).  As explained in detail in the next section, the "terms of [the] proposed award of attorney's fees" here are fair and reasonable.  Fed. R. Civ. P. 23(e)(2)(C)(iii).  And although the defendants have reached as separate settlement agreement with Thompson (D.N. 25-1; D.N. 33-4), there is no evidence that the agreement "influenced the terms

of the [class] settlement by trading away possible advantages for the class in return for advantages to [Thompson]." Fed. R. Civ. P. 23(e)(2), advisory committee's note to 2003 amendment; *see* Fed. R. Civ. P. 23(e)(2)(C)(iv) (requiring a court to consider any side agreements made in connection with the class-action settlement).

### 2.      Equitable treatment of class members

The parties' settlement agreement also "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D).  The class members who submitted a Settlement Claim Form will receive a "Potential Settlement Payment" that is based on the number of miles that each of them drove while delivering pizzas for the defendants (D.N. 25, PageID # 97).  *See* Fed. R. Civ. P. 23(e)(2), advisory committee's note to 2018 amendment (noting that courts can consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims").  And all other class members will receive a payment of $25 (D.N. 25, PageID # 97).  *See Kritzer*, 2012 WL 1945144, at *8 (concluding that "[t]he fact that only" a fraction of the total class members "who received notice [of a settlement] chose to timely submit a claim does not demonstrate inequity in the distribution of [settlement] proceeds").

Thompson will receive a $5,000 "service payment" under the parties' settlement agreement for serving as the class representative.  (*Id.*, PageID # 95)  Such awards "are common in class action settlement[s]," however, and are "routinely approved" by courts.  *Kritzer*, 2012 WL 1945144, at *8.  Additionally, as explained below, Thompson's award is reasonable in light of the time and effort she has devoted to litigating this matter on behalf of the class.  (*See* D.N. 42, PageID # 324–25)  Her service payment thus does not render the parties' settlement agreement any less equitable. *See China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1811 n.7 (2018) (acknowledging that

"class representative[s] might receive a share of class recovery above and beyond [their] individual claims").

## D.     Attorney Fees, Costs, and Expenses

One of the factors a court must consider when reviewing a class-action settlement under Rule 23(e)(2) is the "terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii).  Rule 23(h) separately provides that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  Similarly, "[w]hen a proposed settlement of FLSA claims includes the payment of attorneys' fees, the court must assess the reasonableness of the fee award."  *O'Bryant*, 2020 WL 4493157, at *15; *see Rembert v. A Plus Home Health Care Agency LLC*, 986 F.3d 613, 616 (6th Cir. 2021) ("The award of a reasonable [attorney] fee to a prevailing plaintiff is therefore mandatory under the FLSA.").  In short, a court reviewing a hybrid class-action and FLSA collective-action settlement like the one here must determine whether the attorney fees to be awarded under the parties' settlement agreement are reasonable.  *See Ditsworth*, 2021 WL 2941985, at *4.

A reasonable attorney fee is "adequately compensatory to attract competent counsel" but "avoids producing a windfall for lawyers."  *Rembert*, 986 F.3d at 616 (quoting *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004)); *see Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 279 (6th Cir. 2016) ("When awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved.").  District courts "have the discretion to select" between two methods used to calculate reasonable attorney fees: the lodestar method and the percentage-of-the-fund method.  *Gascho*, 922 F.3d at 279–80; *see Castillo v. Morales, Inc.*, No. 2:12-cv-650, 2015 WL 13021899, at *6 (S.D. Ohio Dec.

20

22, 2015) ("The Court has the discretion to use either the lodestar method or a percentage of the common fund to award attorney fees."). The "starting point" for determining a reasonable attorney fee is the lodestar amount, "which is calculated by multiplying the number of hours reasonably spent on the case by an appropriate hourly rate in the relevant community for such work." *Perry v. AutoZone Stores, Inc.*, 624 F. App'x 370, 372 (6th Cir. 2015). A court can then adjust the lodestar amount "to reflect relevant considerations peculiar to the subject litigation." *Id.* (quoting *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000)). In contrast, under the percentage-of-the-fund method, class counsel are simply awarded a percentage of the settlement funds they secured for the benefit of class members. *Gascho*, 822 F.3d at 279.

A court can "independently validate[]" the reasonableness of attorney fees under either method, and it need not apply both. *Id.* at 281 (observing that the Sixth Circuit has "repeatedly upheld a district court's determination that a fee award is reasonable based solely on a lodestar analysis" without conducting a percentage-of-the-fund cross-check). Yet a court must "articulate the 'reasons for adopting a particular methodology and the factors considered in arriving at the fee.'" *Id.* at 280 (internal quotation marks omitted) (quoting *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009)). Relevant factors include (1) "the value of the benefit rendered to the plaintiff class"; (2) "the value of [counsel's] services on an hourly basis"; (3) "whether the services were undertaken on a contingent fee basis"; (4) "society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others"; (5) "the complexity of the litigation"; and (6) "the professional skill and standing of counsel involved on both sides." *Id.* (quoting *Moulton*, 581 F.3d at 352).

Here, class counsel seek $208,333.33 in attorney fees, costs, and expenses, an amount that the parties' settlement agreement describes as "one-third (1/3) of the Total Settlement Amount."

(D.N. 25, PageID # 94)   Thompson argues in her present motion that these fees "should be approved" by the Court because class counsel's "work has highly and efficiently served the interest of the Class Members"; the proposed fee amount "meets all of the relevant standards established by the Sixth Circuit"; and "awarding attorneys' fees for one-third of the value of the settlement fund has widely been accepted as reasonable by Courts throughout Kentucky." (*Id.*, PageID # 325, 330)   As explained below, class counsel's requested fees are excessive under the percentage-of-the-fund method.   But they are nonetheless reasonable under the alternative lodestar method, and that alone warrants the Court's approval.   *See Gascho*, 822 F.3d at 281.

### 1.   Percentage-of-the-fund method

By requesting attorney fees equivalent to a fixed percentage of the settlement amount in this matter, class counsel effectively ask the Court to approve those fees under the percentage-of-the-fund method.   (*See* D.N. 25, PageID # 94; D.N. 42, PageID # 329–332)   Under that method, "courts must calculate the ratio between attorney's fees and [the] benefit to the class."   *Gascho*, 822 F.3d at 282.   A court should consider the "[t]otal [b]enefit to the class," which ordinarily includes the settlement funds to be paid to class members as well as attorney fees, settlement administration costs, and service payments to class representatives.   *Id.*; *see Ditsworth*, 2021 WL 2941985, at *5.   Moreover, when calculating this denominator, courts can include "the value of the settlement if all class members exercised their right to file valid claims" rather than just "the amount of money [that is] actually paid to the class."   *Gascho*, 822 F.3d at 282.   Reasonable attorney-fee awards under this approach "typically range from 20 to 50 percent of the common fund" secured by class counsel on behalf of class members.   *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 380 (S.D. Ohio 2006).   But fee awards of one-third or less of the total settlement amount are far more common.   *See, e.g.*, *Ditsworth*, 2021 WL 2941985, at *6 (noting that "District

22

Courts in this Circuit have consistently found a fee of 33%" of the settlement amount "to be appropriate in similar [class-action and FLSA collective-action] cases"); *Love*, 2021 WL 4352800, at *5 (observing that "[m]any decisions" in the Western District of Kentucky "have pointed to a [percentage-of-the-fund] range of 20% to 30%").

Class counsel's request for $208,333.33 in attorney fees here appears reasonable at first glance because they maintain that this amount represents one-third of the "Total Settlement Amount" in this matter.  (D.N. 42, PageID # 330; *see* D.N. 25, PageID # 93)  Per the parties' settlement agreement, the "Total Settlement Amount" equals $625,000 and is defined as the "total gross settlement amount for purposes of calculating the amounts necessary to fund settlement class distributions."  (D.N. 25, PageID # 93)  Yet the "maximum amount" of money that the defendants will actually pay under the settlement agreement is $383,900.  (*Id.*, PageID # 92)  The "Total Settlement Amount" invoked by class counsel is thus wholly "illusory" and cannot factor into a percentage-of-the-fund calculation.  *Ditsworth*, 2021 WL 2941985, at *5 (saying the same about attorney fees requested as part of a nearly-identical settlement agreement involving pizza-delivery drivers).

Once that inexplicably inflated value is replaced in the percentage-of-the-fund denominator by the "Maximum Settlement Amount" of $383,900 (D.N. 25, PageID # 92), class counsel's requested attorney fees instead constitute 54 percent of the "[t]otal [b]enefit to the class," *Gascho*, 822 F.3d at 282, a percentage that substantially exceeds those approved by courts that have applied the percentage-of-the-fund method in similar cases.[10]  *See, e.g.*, *Ditsworth*, 2021 WL 2941985, at

---

[10] The numerator here is $208,333.33, the attorney fees requested by class counsel.  And the denominator is the maximum settlement amount of $383,900, which includes attorney fees, the service payment to the class representative, settlement administration costs, and the funds allocated to the FLSA Claim Fund, the Rule 23 Fund, and the Reserve Fund.  Dividing the numerator ($208,333.33) by the denominator ($383,900) yields 0.5427, or 54.27 percent.

*5 (rejecting as "untenable" attorney fees constituting nearly 59 percent of the settlement amount to be paid by the defendant in a class- and collective-action case involving the same class counsel as in this matter); *see also Brandenburg*, 2019 WL 6310376, at *5 (concluding that "one-third of the settlement fund" was a "normal fee amount" in a wage and hour class action involving pizza-delivery drivers); *Wilson v. Anthem Health Plans of Ky., Inc.*, No. 3:14-cv-743, 2019 WL 6898662, at *5 (W.D. Ky. Dec. 18, 2019) (noting that "38% of the common fund is at the high end of what courts in [the Western District of Kentucky] have found to be reasonable").  An attorney-fee award comprising 54 percent of a settlement fund is not impermissible per se.  *See, e.g., Kritzer*, 2012 WL 1945144, at *9–10 (approving a class-action settlement awarding attorney fees equivalent to "nearly 52 percent of the total recovery from Defendants").  But the Court declines to endorse class counsel's less-than-forthright reliance on the percentage-of-the-fund method here and will instead analyze the reasonableness of their requested attorney fees under the alternative lodestar method.

### 2.    Lodestar method

Class counsel's requested attorney fees are reasonable under the lodestar method, which alone renders them reasonable.  *See Gascho*, 822 F.3d at 281 ("[W]e have repeatedly upheld a district court's determination that a fee award is reasonable based solely on a lodestar analysis."); *Rembert*, 986 F.3d at 616 (noting that the lodestar method yields an attorney-fee amount that is "presumptively" reasonable).

To calculate the lodestar figure, a court starts by multiplying the number of hours "reasonably spent" on the litigation by "an appropriate hourly rate."  *Perry*, 624 F. App'x at 372. The court may then, "within reason, 'adjust the lodestar to reflect relevant considerations peculiar to the subject litigation.'"  *Id.* (quoting *Adcock-Ladd*, 227 F.3d at 349).  "To arrive at a reasonable

24

hourly rate, courts use as a guideline the prevailing market rate, defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Geier*, 372 F.3d at 791. Yet a court can also look to "national markets, an area of specialization, or any other market [it] believe[s] is appropriate to fairly compensate attorneys." *Brandenburg*, 2019 WL 6310376, at *6 (quoting *McHugh v. Olympia Ent., Inc.*, 37 F. App'x 730, 740 (6th Cir. 2002)). "To justify an award of attorneys' fees, the party seeking compensation bears the burden of documenting its work." *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 617 (6th Cir. 2007).

In a declaration attached to the present motion, class counsel attest that "the partners at Class Counsels' firms have billed in excess of 200 hours of attorney time" over the course of this litigation (D.N. 42-1, PageID # 338), and billing records filed after the final fairness hearing confirm that those partners have expended at least 217.4 hours on this case. (D.N. 48, PageID # 401; *see* D.N. 51; D.N. 52) Dividing the requested attorney fee of $208,333.33 by 217.4 hours yields an hourly rate of roughly $958. Given class counsel's assertion that the "'norm' for partner level employment lawyers with similar experience and nationwide practices falls within the $500 to $750 per hour range" (D.N. 42-1, PageID # 337), even using the lower end of that range yields a "lodestar multiplier" of approximately 1.92 (i.e., $958/$500). *See Gascho*, 822 F.3d at 279 ([E]nhancing the lodestar with a separate multiplier can serve as a means to account for the risk an attorney assumes in undertaking a case, the quality of the attorney's work product, and the public benefit achieved."). And as Thompson points out in her present motion, such a multiplier is "well within the range of multipliers considered reasonable by courts in the Sixth Circuit for FLSA and wage and hour cases" (D.N. 42, PageID # 328). *See, e.g., O'Bryant*, 2021 WL 5016872, at *6 (observing that "lodestar multipliers between 1 and 3 are common" in "wage and hour collective

and class actions" and deeming a multiplier of 1.97 "reasonable"); *Castillo*, 2015 WL 13021899, at *7 (approving a lodestar multiplier of 2.5).

Any doubts about the reasonableness of the requested attorney-fee award are dispelled by the fact that nearly all of the "germane factors" that courts consider when evaluating such fees clearly weigh in favor of approval here. *See Gascho*, 822 F.3d at 280 (listing six factors that courts consider when "arriving at" a reasonable attorney fee). As just explained, the "value of" class counsel's "services on an hourly basis," *id.*, is reasonable under the lodestar method. Class counsel represented Thompson and the settlement-class members on a contingency fee basis (D.N. 42, PageID # 328) and thus "undertook the risk of not being compensated." *Kritzer*, 2012 WL 1945144, at *9 (stating that this factor "cuts significantly in favor of awarding [counsel] a significant fee"). Society certainly benefits from "incentivizing attorneys to assist in combatting" alleged violations of minimum-wage laws. *Castillo*, 2015 WL 13021899, at *7. This matter, as explained above, is legally and factually complex. *See Gascho*, 822 F.3d at 280 (noting that courts should consider the "complexity of the litigation"). And given the sizable number of similar matters that class counsel have litigated (*see* D.N. 42-1, PageID # 335–36), their "professional skill and standing" are beyond question. *Id.*

In short, the attorney fees to be awarded to class counsel under the parties' settlement agreement are reasonable under the lodestar method, and the Court will thus approve them. *See* Fed. R. Civ. P. 23(h); *Rembert*, 986 F.3d at 616.

## IV.

Thompson also requests that the Court approve (1) the service payment that she will receive for serving as the class representative and (2) the "payment of the actual costs" incurred by the third-party settlement administrator. (D.N. 42, PageID # 312)

A.      **Service Payment to Class Representative**

Under the parties' settlement agreement, Thompson will receive a $5,000 service payment "for her service as [c]lass [r]epresentative" in addition to "any payments she may otherwise receive" as a settlement-class member.  (D.N. 25, PageID # 95)  Such service payments are "common in class action settlement[s]" and are "routinely approved" by courts in order to compensate class representatives for the service they provided to the class and the risks they took on in doing so.  *Kritzer*, 2012 WL 1945144, at *8.  When assessing the reasonableness of a service payment, courts consider among other factors "the named plaintiffs' actions in protecting the class, the resulting benefits to the class, the risks assumed by the named plaintiffs, and the time and effort spent by the named plaintiffs."  *Ditsworth*, 2021 WL 2941985, at *6.

Class counsel represent that Thompson "substantially assisted [them] in achieving th[e] settlement" here by "providing guidance and assistance on numerous occasions"; "participat[ing] in the settlement process"; and "advocat[ing] for *all* of the delivery drivers" in the settlement class.  (D.N. 42, PageID # 324–25 (emphasis in original); *see* D.N. 42-1, PageID # 338)  The Court also recognizes "that it is appropriate to reward" class representatives like Thompson "who obtain tangible benefits for their fellow workers" and "further[] the important public policies underlying the [FLSA]."  *Brandenburg*, 2019 WL 6310376, at * 8.  And the $5,000 service payment is comparable to those awarded in similar hybrid class-action and FLSA collective-action cases involving pizza-delivery drivers.  *See id.* (approving a $10,000 service award); *Ditsworth*, 2021 WL 2941985, at *6 (approving a $5,000 service award).  Accordingly, the Court will approve Thompson's service payment as reasonable.

B.      **Payment of Settlement Administration Costs**

Thompson also requests that the Court approve the $19,964.42 in fees and expenses incurred by the third-party settlement administrator retained by class counsel in this matter, an amount that will comprise part of the "Maximum Settlement Amount" to be paid by the defendants. (D.N. 42, PageID # 312; *see* D.N. 25, PageID # 92, 95; D.N. 43, PageID # 382–84)  As a general matter, class counsel is "entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and in obtaining settlement," and such reimbursement is customary when parties to a class action create a common settlement fund for the benefit of a class. *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 535 (E.D. Mich. 2003); *see Brandenburg*, 2019 WL 6310376, at *7 (approving an expense award reimbursing class counsel for "class notice-related fees").  Here, the settlement administrator seeks reimbursement for the costs of mailing the notices of the parties' settlement agreement to class members; resending notices that were initially returned as undeliverable; processing opt-in FLSA claims; and general settlement management.  (D.N. 43, PageID # 382–84)  The settlement administrator will also be responsible for "mak[ing] all payment distributions" to class members once the parties' settlement agreement is approved.  (*Id.*, PageID # 343; *see* D.N. 25, PageID # 103)  These expenses are "reasonable and necessary in connection with . . . resolving this case," *Brandenburg*, 2019 WL 6310376, at*7, and the Court will therefore approve them.

## V.

Finally, the Court must decide whether the parties' settlement agreement should remain under seal in its entirety after it is approved.  (*See* D.N. 27; D.N. 39; D.N. 40)  The parties were initially permitted to file their Settlement and Release Agreement, Supplemental Settlement Agreement and Release, and Notice of Class and Collective Action Settlement and Final Fairness

Hearing under seal.  (D.N. 27; *see* D.N. 25)  The Court later decided, however, "that supplemental briefing [wa]s necessary on the issue of whether the settlement agreement and related documents may properly be sealed in the record" in accordance with applicable Sixth Circuit case law. (D.N. 39)  The defendants filed an unopposed supplemental brief in response to the Court's Order, in which they explained that they "wish to maintain the confidentiality" of the settlement agreement because it "contain[s] the monetary terms" of the parties' settlement.  (D.N. 40, PageID # 302).  They also argued that the settlement documents "meet the standards" for a seal "set forth by the Sixth Circuit."  (*Id.*; *see id.*, PageID # 302–06)  Thompson does not oppose the defendants' request for a seal.  (*See* D.N. 41)

The Sixth Circuit recognizes "a 'strong presumption in favor of openness' as to court records." *Shane Grp., Inc.*, 825 F.3d at 305 (quoting *Brown & Williamson Tobacco Corp v. FTC*, 710 F.2d 1165, 1179 (6th Cir. 1983)).  This presumption applies whenever parties to a suit "place material in the court record," *id.*, including settlement agreements that require court approval.  *See Snook v. Valley OB-GYN Clinic, P.C.*, No. 14-cv-12302, 2014 WL 7369904, at *2 (E.D. Mich. Dec. 29, 2014) (stating that a FLSA settlement agreement submitted for court approval is "indisputably" the sort of judicial record that is "subject to the presumption of [public] access"); *see Shane Grp.*, 825 F.3d at 305 (asserting that "the standards for denying public access to the record" should be applied "with particular strictness" in class actions).  "Only the most compelling reasons can justify non-disclosure of judicial records." *Shane Grp. Inc.*, 825 F.3d at 305 (quoting *In re Knoxville News-Sentinel Co.*, 723 F.2d 470, 476 (6th Cir. 1983)).  And even when a party provides a compelling reason for sealing certain documents, that party must still demonstrate "on a document-by-document, line-by-line basis" that a seal is "narrowly tailored to serve that reason." *Id.* at 305, 308.

Moreover, the burden borne by a party seeking to seal a FLSA settlement agreement is "heightened further . . . due to the strong public interest in the enforcement of the FLSA." *David v. Kohler Co.*, No. 1:15-cv-1263, 2019 WL 6719840, at *4 (W.D. Tenn. Dec. 10, 2019). Indeed, several courts within the Sixth Circuit have held that a "confidentiality provision in a[] FLSA settlement agreement . . . contravenes the legislative purpose of the FLSA" and have accordingly declined to allow such agreements to be filed under seal. *Chime v. Family Life Counseling & Psychiatric Servs.*, No. 1:19-cv-2513, 2020 WL 6746511, at *2, *4 (N.D. Ohio Nov. 17, 2020) (quoting *Steele*, 172 F. Supp. 3d at 1031) (declining to approve a FLSA settlement agreement with a confidentiality provision and collecting cases reaching similar decisions); *see Whitehead v. Garda CL Cent., Inc.*, No. 3:20-cv-736, 2021 WL 4270121, at *3 (W.D. Ky. Sept. 20, 2021) (denying a motion to file a FLSA settlement agreement under seal after applying the *Shane Group* standard).

In their supplemental brief, the defendants ably distinguish this matter from *Shane Group* on the facts. (*See* D.N. 40, PageID # 303–05) But *Shane Group* established a general legal standard governing all requests to seal court records from public view—namely, that a party wishing to seal such records must offer a "compelling reason[]" for doing so, *Shane Grp., Inc.*, 825 F.3d at 305—and the defendants have failed to satisfy that standard here. They contend that "confidentiality is a critical factor in support of the public policy encouraging litigants to settle claims without resort to burdensome litigation" and that the parties' interest "in effectuating a mutually-beneficial, private resolution of the claims in this case outweighs the public's general right to freely access court documents." (D.N. 40, PageID # 306) But "courts have 'roundly rejected' the argument that confidentiality provisions in [FLSA] settlement agreements" like the one here "are a sufficient interest to overcome the presumption of public access." *Snook*, 2014

WL 7369904, at *3 (quoting *Joo v. Kitchen Table, Inc.*, 763 F. Supp. 2d 643, 648 (S.D.N.Y. 2011)); *see also Chime*, 2020 WL 6746511, at *5 (deeming a similar argument about the public having no interest in the terms of a FLSA settlement to be "without merit"). The defendants add that the "settlement awards to each plaintiff in this case are based on Defendants' confidential business practices, including strategic decisions about how locations are staffed and how deliveries are compensated." (D.N. 40, PageID # 306) Such "platitudes" about purportedly sensitive information, however, do not justify a seal. *Shane Grp., Inc.*, 825 F.3d at 308. And in any event, the settlement agreement that the defendants wish to seal reveals nothing about their staffing and compensation strategies. They have thus fallen far short of "show[ing] a compelling reason why" their class- and FLSA collective-action settlement agreement "should be sealed" in its entirety. *Id.* at 305.

In response to the Court's order following the final fairness hearing (D.N. 47), the defendants filed versions of the parties' settlement documents that have the total settlement amount, the settlement payments owed to the class members, and related information redacted. (D.N. 49; *see* D.N. 50; D.N. 50-1; D.N. 50-2) Recognizing that "settlement amounts can be—and often are—sealed," *In re Black Diamond Mining Co.*, No. 15-cv-96, 2016 WL 4433356, at *2 (E.D. Ky. Aug. 18, 2016), the Court will order that these redacted versions of the parties' settlement documents be filed on the public docket to ensure that the public can "ascertain[] what evidence and records" the Court "relied upon in reaching [its] decisions" here. *Shane Grp., Inc.*, 825 F.3d at 305 (quoting *Brown & Williamson*, 710 F.2d at 1181).

## VI.

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

31

**ORDERED** as follows:

(1)     Thompson's unopposed motion for final approval (D.N. 42) is **GRANTED**.  The parties' Settlement and Release Agreement (D.N. 25; D.N. 33-3) and Supplemental Settlement Agreement and Release (D.N. 25-1; D.N. 33-4) are finally approved and shall be consummated in accordance with the terms and provisions thereof.

(2)     The attorney fees, costs, and expenses to be paid to class counsel as set forth in the Settlement and Release Agreement are approved.

(3)     The service payment to be paid to Thompson as set forth in the Settlement and Release Agreement is approved.

(4)     The settlement administration costs to be paid to the third-party settlement administrator as set forth in the Settlement and Release Agreement are approved.

(5)     The following class is certified pursuant to § 216(b) of the FLSA for settlement purposes:

> All delivery drivers employed by Defendants or the Additional Entities from May 29, 2017, to June 1, 2021.

(6)     The following classes are certified pursuant to Federal Rule of Civil Procedure 23 for settlement purposes:

> All delivery drivers who worked for Defendants or the Additional Entities during the Release Period, with the Release Period defined as the five-year period preceding the Court's Order approving the Parties' Joint Motion to Stay Pending Mediation (May 29, 2015) for Participating Class Members who worked for Defendants or an Additional Entity in Kentucky, and the three-year period preceding the Court's Order approving the Parties' Joint Motion to Stay Pending Mediation (May 29, 2017) for Participating Class Members who worked for an Additional Entity, through the date the Court granted Preliminary Approval (June 1, 2021).

(7)     Thompson's previous unopposed motion for final approval (D.N. 38) is **DENIED** as moot.

(8)     The Clerk of Court is **DIRECTED** to unseal in the record of this case the redacted versions of the parties' Settlement and Release Agreement (D.N. 50); Supplemental Settlement Agreement and Release (D.N. 50-1); and Notice of Class and Collective Action Settlement and Final Fairness Hearing (D.N. 50-2).

(9)     This action is **DISMISSED** with prejudice in accordance with the terms of the Settlement and Release Agreement and Supplemental Settlement Agreement and Release and is **STRICKEN** from the Court's active docket.  The Court retains "continuing jurisdiction over the Action and the Settlement solely for purposes of enforcing the Settlement, addressing settlement administration matters, and addressing such matters as may be appropriate under court rules or applicable law."  (D.N. 25, PageID # 106)

May 4, 2022

**David J. Hale, Judge**
**United States District Court**